Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
THANE CHARMAN

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM,<br><br>Defendants. | Case No.: **'23 CV 2184 TWR DDL**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

    Plaintiff THANE CHARMAN ("Plaintiff" and/or "Plaintiffs"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

# JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM is, and at all times herein mentioned was, a Delaware Corporation, headquartered in Connecticut, doing business in the County of San Diego, State of California (hereinafter referred to as "Defendant" and/or "SPECTRUM").

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court decided that federal courts have federal question subject matter jurisdiction over such TCPA civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 387, 132 S.Ct. 740, 753 (2012).

4. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

# NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following two sub-classes of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from November 29, 2019 to the present, including up to and through trial.*

And, the second sub-class:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber to whose residential telephone Defendant and/or its agents transmitted one or more telemarketing calls using an artificial or prerecorded voice without prior express written consent from the called party at any time from November 29, 2019 to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. SPECTRUM is engaged in a scheme to sell cable television and internet services via prerecorded and live cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8. Thus, SPECTRUM is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, SPECTRUM either directly or using an agent acting at the direction of SPECTRUM makes prerecorded or live calls to various numbers in the United States to sell SPECTRUM's services without regard to whether those numbers are on the Do Not Call Registry or not.

10. SPECTRUM and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11. SPECTRUM and/or its agents make prerecorded telemarketing calls without prior express written consent.

12. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

13. SPECTRUM has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

## FACTUAL DETAILS RE NAMED PLAINTIFF

14. Defendants made three (3) calls to THANE CHARMAN's home phone number (619-300-1119) wherein they tried to pitch their cable television and internet services on the following dates and times and using the following Caller ID ("CID") numbers:

- 12/05/2019, 2:27 pm, CID 657-242-3905; Answered call
- 12/19/21, 8:22 am, CID 626-593-8318; Answered call
- 12/19/21, 8:29 am, CID 626-593-8318; Answered call

15. Mr. Charman made a log of all the calls he received from SPECTRUM during or shortly after receiving the calls which includes the date and time of the call as well as brief notes about what happened during the calls.

16. The all calls illegally blocked transmitting Caller ID Name information. *See*, 47 U.S.C. § 227(e) (Truth in Caller ID Act of 2009).

17. Mr. Charman's residential line has been tariffed as a residential line since he was assigned it by the phone company more than five (5) years ago.

18. Mr. Charman registered his residential line on the National "Do-Not-Call" Registry on May 17, 2018 and Mr. Charman has kept his residential line on the Registry from that time to the present.

19. Mr. Charman never gave any SPECTRUM or any other person, agent, employee or entity associated with SPECTRUM express written permission to call him, nor does he have an established business relationship nor personal

- 4 -
Complaint

relationship with SPECTRUM or any other person, agent, employee or entity associated with SPECTRUM.

20. On the first call on December 5, 2019, Mr. Charman received a call on his residential phone line at approximately 2:27 pm using the CID number 831-915-7315.

21. The call was autodialed and played a prerecorded sales message which started with the line, "Hi, this is Lisa…" and went on to pitch a sale of SPECTRUM's cable television and internet services to Mr. Charman or whomever might have answered.

22. While the prerecorded message mentioned the SPECTRUM name brand, Mr. Charman knows telemarketing is sometimes conducted by agent companies who are alleged independent contractors, so he wanted to be sure the call and service offered was from SPECTRUM so he requested a callback.

23. SPECTRUM transmitted a second unsolicited telemarketing call to Mr. Charman's residential telephone number on December 19, 2019 at 8:22 am, using the CID number 847-759-6654.

24. The entire purpose of the second call was to pitch a sale of SPECTRUM's cable television and internet services to Mr. Charman or whomever might have answered.

25. SPECTRUM transmitted a third unsolicited telemarketing call to Mr. Charman's residential telephone number on December 19, 2019 at 8:29 am, using the CID number 847-759-6654.

26. The entire purpose of the third call was to pitch a sale of SPECTRUM's cable television and internet services to Mr. Charman or whomever might have answered.

27. Immediately after the first unsolicited call, and days before the second and third unsolicited calls, SPECTRUM called on December 5, 2019 at 8:11am regarding the callback Mr. Charman requested during the first call.

Complaint

28. Plaintiff does not allege this callback call is violative of the TCPA because it was requested by Plaintiff to confirm the identity of the caller.

29. During the callback call, which was broken into three parts between 8:11 am and 9:35 am, Mr. Charman asked the operator to confirm this was in fact SPECTRUM calling which she did so, and he provided credit card information to reserve and order and get an email to make it absolutely clear who had called him illegally in the first and subsequent sales calls.

30. Mr. Charman did receive an email directly from SPECTRUM after the requested callback, and while it offered terms and conditions, Mr. Charman never agreed to them or assented to them, and no purchase was made and his credit card money deposit was returned.

31. Neither of the second or third calls were in response to the callback, referred to the callback, in any way registered any knowledge of it, or referred to Mr. Charman by name, they were just standard unsolicited telemarketing calls to whomever might answer.

32. Mr. Charman never agreed to purchase any cable television and internet services.

33. All of the callers claimed the calls were made by SPECTRUM directly.

34. Plaintiff pleads on information and belief that to the extent SPECTRUM may have relied on any agent or other entity to make telemarketing calls on its behalf, SPECTRUM had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or being made using prerecorded messages to residential numbers because all callers claimed they were directly with SPECTRUM and any orders therefrom were process directly by SPECTRUM using SPECTRUM email address.

35. Alternatively, Plaintiff pleads on information and belief that to the extent SPECTRUM may have relied on any agent or other entity to begin

telemarketing calls on its behalf, SPECTRUM hired that agent to interact with the public on SPECTRUM's behalf using SPECTRUM name therefore gave implied authority to represent SPECTRUM.

36. Alternatively, Plaintiff pleads on information and belief that SPECTRUM ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct.

37. SPECTRUM may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## DIRECT LIABILITY OF SPECTRUM

38. As detailed above, Plaintiffs pleads that CID numbers 831-915-7315 and 847-759-6654 belong directly to SPECTRUM and that SPECTRUM directly made the calls associated with these CIDs.

39. Plaintiff pleads on information and belief that all calls made from CID numbers 831-915-7315 and 847-759-6654 were made by direct employees of SPECTRUM.

40. Plaintiff was also called back by a SPECTRUM operator who Plaintiff believes is a direct employee of SPECTRUM, and who called from CID number 847-759-6654, which shows that all calls from CID number 847-759-6654 are from a direct employee of SPECTRUM.

41. Plaintiff pleads on information and belief that the officers, managers and employees for SPECTRUM knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made because the calling was cold call junk telemarketing not directed to any specific person and used a technically sophisticated calling system that could illegally hide Caller ID Name

which indicates that this was an intentional and organized corporate sales effort and not a rogue employee or random event.

## **AGENT LIABILITY ALLEGATIONS**

42. Plaintiff pleads on information and belief that to the extent SPECTRUM may have relied on any agent or other entity to make telemarketing calls on its behalf, SPECTRUM had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to bring direct SPECTRUM representatives into the call to attempt to complete the sale.

43. Alternatively, Plaintiff pleads on information and belief that to the extent SPECTRUM may have relied on any agent or other entity to make telemarketing calls on its behalf, SPECTRUM hired that agent to interact with the public on SPECTRUM' behalf and therefore gave implied authority to represent SPECTRUM.

44. Alternatively, Plaintiff pleads on information and belief that SPECTRUM ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

45. Plaintiff pleads on information and belief that to the extent SPECTRUM uses any agents to make calls, SPECTRUM has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry and/or made prerecorded calls to residential lines for its benefit.

46. Plaintiff pleads on information and belief that to the extent SPECTRUM uses any agents to make calls, SPECTRUM knew or reasonably should have known that its agents were was making the illegal calls to residential

numbers on the National "Do-Not-Call" Registry and/or made prerecorded calls to residential lines for its benefit.

47. Plaintiff pleads on information and belief that to the extent SPECTRUM uses any agents to make calls, SPECTRUM explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry and/or making prerecorded calls to residential lines for its benefit for its benefit by condoning their actions afterwards.

48. Plaintiff pleads on information and belief that to the extent SPECTRUM uses any agents to make calls, SPECTRUM explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of SPECTRUM and/or make prerecorded calls to residential lines for its benefit..

49. Plaintiff pleads on information and belief that every person who called him during the calls detailed in this Complaint are all agents of SPECTRUM hired by SPECTRUM to conduct telemarketing on SPECTRUM's behalf, and that these persons engaged in all conduct alleged to have been conducted by agents of SPECTRUM.

### "ON BEHALF OF" LIABILITY ALLEGATIONS

50. Plaintiff pleads that all calls complained of above were made "on behalf of" SPECTRUM within the meaning of those words as used in title 47 of the United States Code section 227(c)(5): "A person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State…" [emphasis added].

51. Plaintiff contends that "on behalf of" liability is a lesser standard than traditional agency liability.

52. Plaintiff pleads on information and belief that SPECTRUM hired, retained, instructed or allowed any entity or person who made the alleged calls to makes those calls on behalf of SPECTRUM in order to sell SPECTRUM's financial products.

53. Plaintiff pleads on information and belief that every person who called him during the calls detailed in this Complaint were hired, paid, retained, and/or engaged to make calls on behalf of SPECTRUM.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

54. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship and that no telemarketer may make a prerecorded telemarketing call to a residential line without prior express written consent.

55. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

56. Plaintiff has been harmed by these calls by the intrusion upon his privacy by callers who had no legal right to call his residential number.

57. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

58. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

59. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

60. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

61. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

62. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

63. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following two sub-classes of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing*

*they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from November 29, 2019 to the present, including up to and through trial.*

And, the second sub-class:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber to whose residential telephone Defendant and/or its agents transmitted one or more telemarketing calls using an artificial or prerecorded voice without prior express written consent from the called party at any time from November 29, 2019 to the present, including up to and through trial.*

64. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

65. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

66. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of

Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

67. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

    a.    Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

    b.    Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

    c.    Whether Defendant transmitted any calls for telemarketing purposes using prerecorded or artificial voice to residential lines without prior express written consent.

    d.    Whether the transmission of these calls was done willfully or knowingly by Defendant.

    e.    Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

68. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

69. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

70. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

71. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION: TCPA VIOLATION
## CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

72. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

73. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

74. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

75. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

76. Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

77. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION: TCPA VIOLATION TELEMARKETING CALL TO RESIDENTIAL LINE USING PRERECORDED OR ARTIFICAL VOICE
**(On Behalf of the Plaintiff Class)**

78. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

79. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

80. Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

81. Defendants have called Plaintiff's residential telephone line, using an artificial or prerecorded voice to deliver a message, without Plaintiff's express permission during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's

residential telephone line.  These calls were not made for any emergency purpose, nor were these calls exempt under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

82. Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b)(1) (B). Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

4. For attorney's fees pursuant to all applicable federal and state statutes;
5. For costs of suit herein incurred; and
6. For such further relief as the Court deems proper.

DATED: November 29, 2023 **PRATO & REICHMAN, APC**

/s/ Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
And All Others Similarly Situated

Complaint