1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM,<br><br>                        Defendant. | Case No.: 23-CV-2184 TWR (DDL)<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO SEAL AND (2) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(ECF Nos. 29, 30, 51) |

Presently before the Court are Defendant Charter Communications, Inc.'s Motion for Judgment on the Pleadings ("Mot.," ECF No. 29) and Unopposed Motion to File Documents Under Seal ("Mot. to Seal," ECF No. 30) (together, the "Motions"), as well as Plaintiff Thane Charman's Response in Opposition to ("Opp'n," ECF No. 37) and Supplemental Brief in Opposition to ("Pl.'s Supp. Br.," ECF No. 46), and Defendant's Reply in Support of ("Reply," ECF No. 43) and Supplemental Brief in Support of ("Def.'s Supp. Br.," ECF No. 49), the Motion.  The Court held a hearing on October 24, 2024, at 1:30 p.m.  (*See* ECF No. 45.)  Having carefully reviewed the Parties' arguments, Plaintiff's First Amended Complaint ("FAC," ECF No. 4), the record, and the relevant law, the Court **GRANTS** Defendant's Motion to Seal and **DENIES WITHOUT PREJUDICE** Defendant's Motion for Judgment on the Pleadings.

# BACKGROUND

Plaintiff is a resident of San Diego County, California. (FAC ¶ 2.) His residential phone number (identified as XXX-XXX-1119) has been registered on the National Do Not Call Registry since May 17, 2018. (*Id.* ¶ 18.) Between 2019 and 2021, Plaintiff received three unsolicited telemarketing calls attempting to "pitch a sale of [Defendant's] cable television and internet services to [Plaintiff] or whomever might have answered." (*Id.* ¶ 14.) During or shortly after each of the calls, Plaintiff recorded the Caller ID number, noted the date and time, and made brief notes about the call. (*Id.* ¶¶ 14–15.) According to Plaintiff, "the calls were made by [Defendant]'s 'Authorized Reseller', Linking Flux, LLC[,]" and Defendant is liable for the calls under a theory of agency liability.[1] (Pl.'s Supp. Br. at 5, 7–8; FAC ¶¶ 42–49). Although Defendant maintains that neither it nor its authorized telemarketing vendors called Plaintiff, it admits that "there is, perhaps, a chance that Retail Partner Linking Flux called [Plaintiff.]" (ECF No. 29-1 ("Def.'s Mem.") at 17.)

During the first call, on December 5, 2019, (the "December 5 call"), Plaintiff requested a callback to verify the identity of the party who contacted him. (FAC ¶¶ 20, 22.) Plaintiff received a callback from someone claiming to represent Defendant. (*Id.* ¶ 29.) Plaintiff placed an order during the December 5 call to ensure that he would receive a follow-up email, (*id.*), and, after the callback, Plaintiff received an email from Defendant offering terms and conditions for his order. (*Id.* ¶ 30.) Plaintiff declined to complete the purchase, however, and his credit card deposit was returned. (*Id.*)

More than two years later, on December 19, 2021, Plaintiff received two additional unsolicited telemarketing calls.[2] (*Id.* ¶¶ 23, 25.) Plaintiff received the calls within seven

---

[1]     The First Amended Complaint asserts three separate theories of liability: (1) direct liability, (FAC ¶¶ 38–41); (2) agency liability, (*id.* ¶¶ 42–49); and (3) "on behalf of" liability pursuant to the TCPA, (*id.* ¶¶ 50–53). In defending against Defendant's personal jurisdiction challenge, Plaintiff focuses exclusively on his agency liability theories. (*See* Pl.'s Supp. Br. at 5–10.)

[2]     The exact date of the subsequent calls is unclear. In his declaration, Plaintiff asserts that he received the "two additional violative calls on *January 2, 2020*." (Charman Decl. ¶ 9 (emphasis added).)

minutes of each other, and both calls came from the same Caller ID number.  (*Id.*)  The purpose of both calls was to sell Defendant's cable television and internet services.  (*Id.* ¶¶ 24, 26.)

Plaintiff filed this putative class action against Defendant on November 29, 2023, asserting claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (*See generally* ECF No. 1 ("Compl.").)  After the Court ordered Plaintiff to show cause why the action should not be transferred for lack of proper venue, (*see* ECF No. 3), Plaintiff filed an Amended Complaint and changed his alleged residence at the time of the calls to San Diego County.  (*Compare* Complaint ¶ 1, *with* FAC ¶ 1.)  Defendant timely filed its Answer on May 17, 2024.  (*See generally* ECF No. 20 ("Ans.").)   In its Answer, Defendant asserted that the Court lacks personal jurisdiction over it "because Defendant is not at home in California and did not place, authorize, or direct any of the calls at issue." (*Id.* at 25.)

On July 3, 2024, Defendant filed the instant Motion, reasserting its personal jurisdiction defense.  (*See generally* Mot.)  In support of the Motion, Defendant submitted declarations from Matt Baker ("Baker Decl.," ECF No. 29-2) and Christine Flores ("Flores Decl.," ECF No. 29-3), as well as a partially redacted declaration from Ilco Trimceski (ECF No. 29-4).  Separately, Defendant filed the instant Motion to Seal and an unredacted copy of Trimceski's declaration.  (ECF No. 30; ECF No. 31 ("Trimceski Decl.").)  Plaintiff, for his part, submitted a declaration from Christopher Reichman.  (*See* "Reichman Decl.," ECF No. 37-1.)

At the October 24, 2024 hearing, the Court granted the Parties additional time to supplement the record due to the procedural irregularities of the instant Motion.  (*See* ECF No. 45.)  Plaintiff filed a Supplemental Brief in Opposition to the Motion, (*see* Pl.'s Supp. Br.), to which he attached a declaration of his own, ("Charman Decl.," ECF No. 46-2), an audio recording of the December 5 call, (ECF No. 46-3), copies of the emails Plaintiff allegedly received from Defendant after the calls, (ECF No. 46-4), and an excerpt of the transcript from Ilco Trimceski's August 22, 2024 deposition ("Trimceski Dep.," ECF No.

46-5).  Defendant filed a Supplemental Brief in Support of the Motion, (*see* Def.'s Supp. Br.), to which it attached a declaration from Benjamin Williams ("Williams Decl.," ECF No. 49-1) and an excerpt of the transcript from Ilco Trimceski's August 22, 2024 deposition ("Trimceski Dep.," ECF No 49-1, Ex. 1).[3]

## MOTION TO SEAL

### I.      Legal Standard

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  A party seeking to seal a judicial record bears the burden of overcoming this strong presumption.  *Foltz*, 331 F.3d at 1135.  The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016).  Where the underlying motion is more than tangentially related to the merits of the case, the stringent "compelling reasons" standard applies.  *Id.* at 1096–98.  Where the underlying motion does not surpass the tangential relevance threshold, the less exacting "good cause" standard applies.  *Id.*  The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case."  *Nixon*, 435 U.S. at 599.

/ / /

/ / /

---

[3]      Both Parties submitted excerpts of the transcript from Trimceski's deposition.  For the sake of simplicity, all citations to Trimceski's deposition refer to the transcript-generated page numbers in the bottom right corner of each page of the transcript—not to the page numbers generated by the electronic case filing ("ECF") system.

## II.     Analysis

Through an unopposed motion, Defendant requests leave to file under seal a "confidential commercial contract" between it and Linking Flux ("Contract," ECF No. 31 at 7–30),[4] which Defendant attached to Ilco Trimceski's declaration.[5]  (Mot. to Seal ¶ 2.) Defendant also seeks to partially seal portions of Trimceski's declaration "that directly quote[] or otherwise reveal[] parts of the confidential contract[.]"  (*Id.*)  Defendant submitted both Trimceski's declaration and the Contract in support of its Rule 12(c) Motion for judgment on the pleadings.  (*Id.*)  For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Seal.

Because a motion for judgment on the pleadings is more than tangentially related to the underlying merits of the case, Defendant must show a compelling reason to keep the commercial contract and portions of Trimceski's declaration under seal.  *See Malig as Tr. for Malig Fam. Tr. v. Lyft, Inc.*, No. 19-CV-02690, 2021 WL 3709162, at *3 (N.D. Cal. Aug. 20, 2021) (applying the "compelling reasons" standard to a motion to seal documents attached to a Rule 12(c) motion); *Autodesk, Inc. v. Alter*, No. 16-CV-04722, 2017 WL 1862505, at *7–8 (N.D. Cal. May 9, 2017) (same).  There is a compelling reason to seal court records that "might be used . . . 'as sources of business information that might harm a litigant's competitive standing.'"  *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon*, 435 U.S. at 598–99).  District courts in the Ninth Circuit have found that a litigant's competitive standing could be harmed by the disclosure of non-public financial information, pricing strategy, and business decision-making information.  *See, e.g., Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882, 2019 WL 3099711, at

---

[4]     All citations to the Contract refer to the page numbers in the bottom right corner of each page of the document—not to the page numbers generated by the electronic case filing ("ECF") system.

[5]     Defendant failed to submit a declaration in support of its Motion to Seal, violating Section III.C.4 of the undersigned's Civil Standing Order.  The Motion to Seal appears to reference a "Schmieder Declaration," (*see* Mot. to Seal ¶ 5), but no such declaration was filed, (*see generally* Docket).

*2–3 (C.D. Cal. June 17, 2019) (granting motion to seal "non-public financial information" and "strategic and business-making information"); *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1045–46 (N.D. Cal. 2018) (granting motion to seal portions of document "containing nonpublic pricing terms, private bank account information and personal identification information"); *Rodman v. Safeway, Inc.*, No. 11-cv-03003, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) (granting motion to seal documents discussing "pricing strategy, business decision-making, customer research, and financial records").

Here, Defendant asks the Court to seal the Contract—as well as several lines from Trimceski's declaration that reference the Contract—on the grounds that these materials "contain, quote, or otherwise reveal [Defendant]'s non-public, confidential, and competitively sensitive business information[.]" (Mot. to Seal ¶¶ 2, 5.) Specifically, Defendant claims that it will "suffer competitive harm" because the documents contain information that is "non-public and proprietary and includes pricing strategies designed to maximize marginal revenue." (*Id.* ¶ 7.)

The Court agrees with Defendant that the Contract contains "sensitive business information," (*id.* ¶ 5). For example, the Contract includes a pricing structure by which Defendant and Linking Flux agreed to calculate the commission paid to Linking Flux for each subscription service sold. (*See* Contract at 2.) It is reasonably foreseeable that public disclosure of this pricing structure "could allow Defendant's competitors to undercut Defendant in the marketplace." *See Charles v. Portfolio Recovery Assocs., LLC*, 654 F. Supp. 3d 1153, 1157 (D. Or. 2023) (granting motion to seal sales agreement containing "purchase price and financial value of the accounts [the] defendant purchased"). The Contract also includes various substantive terms, such as grounds for termination, warranty agreements, an indemnity provision, and insurance requirements. (*See* Contract at 9, 14–15.) Public disclosure of the Contract could impair Defendant's ability to negotiate different terms in the future. *See J.R. Simplot Co. v. Wash. Potato Co.*, No. C16-1851RSM, 2016 WL 11066581, at *1 (W.D. Wash. Dec. 29, 2016) (sealing documents that would, if

/ / /

publicly filed, put the defendant "at a competitive disadvantage when negotiating future loan terms, contracts with customers, and business opportunities").

Additionally, both the Contract and the redacted portions of Trimceski's declaration contain Defendant's marketing and strategic information. The Contract details Defendant's guidelines for referring to and describing its products and trademarks. (*See* Contract at 20–22.) Trimceski's declaration divulges Defendant's approved marketing tactics and Defendant's instructions to Linking Flux regarding marketing strategies. (Trimceski Decl. ¶¶ 8–9.) Because this information reveals the methods Defendant uses to market its services, the Court finds that there is a compelling reason to keep it under seal. *See Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, No. C17-1340, 2019 WL 6829886, at *2 (W.D. Wash. Dec. 13, 2019) (sealing documents that "include[d] marketing and advertising techniques").

The Court finds that Defendant has shown compelling reasons why the Contract and portions of Trimceski's declaration should be kept under seal. Accordingly, the Court **GRANTS** Defendant's Motion to File Under Seal. The Clerk of Court **SHALL FILE UNDER SEAL** ECF No. 31 in its entirety.

## MOTION FOR JUDGMENT ON THE PLEADINGS

### I.    Legal Standard

Because Rule 12(b) motions and Rule 12(c) motions "are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *see also Owino v. CoreCivic, Inc.*, 700 F. Supp. 3d 939, 943 (S.D. Cal. 2023) ("When a court rules on a Rule 12(c) motion asserting a Rule 12(b) defense, it applies the same standard of review it would apply to the analogous Rule 12(b) motion."). Here, Defendant's Rule 12(c) Motion asserts a lack of personal jurisdiction defense, so the Court applies the Rule 12(b)(2)

/ / /

/ / /

/ / /

standard.[6]  *See Moledina v. Marriott In'l, Inc.*, 635 F. Supp. 3d 941, 947 (C.D. Cal. 2022) (applying Rule 12(b)(2) standard to Rule 12(c) motion); *see also IDC Logistics Inc. v. DILE Sols. LLC*, No. CV 22-8690, 2023 WL 4680368, at *2 (C.D. Cal. June 16, 2023) (same).

Under Rule 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  If the defendant's motion "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts[.]"  *Ranza*, 793 F.3d at 1068 (quotations omitted).  To make such a showing, the plaintiff "[can]not simply rest on the bare allegations of the complaint"—the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Amba Mktg. Sys. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); s*ee also Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002); *IDC Logistics Inc.*, 2023 WL 4680368, at *2 ("When considering a motion to dismiss for lack of personal jurisdiction, courts are not confined to the plaintiff's complaint; it is appropriate to consider evidence such as party declarations.").  At this stage, however, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Ranza*, 793 F.3d at 1068 (alteration in original); *see also LNS Enters. LLC v. Cont'l Motors, Inc.* 22 F.4th 852, 858 (9th Cir. 2022).

Although the Rule 12(b)(2) standard permits the Court to consider materials outside the pleadings, Plaintiff argues that if the Court fails to exclude the declarations attached to Defendant's Rule 12(c) Motion, then Rule 12(d) requires the Court to treat the Motion as

---

[6]      Plaintiff contends that *Dworkin* "never espouses any claim that a Rule 12(c) motion can be converted into any old Rule 12(b) motion."  (Opp'n at 3.)  However, the language of the opinion implies that, although the Rule 12(c) motion in that case was equivalent to a Rule 12(b)(6) motion, the court's rationale applies to other Rule 12(b) motions, including a Rule 12(b)(2) motion.  *See Dworkin*, 867 F.2d at 1192.  Other district courts in the Ninth Circuit have interpreted *Dworkin* accordingly.  *See, e.g., Owino*, 700 F. Supp. 3d at 943; *Chorost v. Rotor Am. Inc.*, No. CV-21-00235, 2022 WL 17361299, at *1 (D. Ariz. Aug. 8, 2022).

a motion for summary judgment under Rule 56.  (*See* Opp'n at 7–8; Pl.'s Supp. Br. at 13–14.)  Indeed, under Rule 12(d), "[i]f on a motion under Rule . . . 12(c) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

Some courts, however, have interpreted similar Rule 12(c) motions as Rule 12(i) motions for pre-trial adjudication.  *See, e.g., Owino*, 700 F. Supp. 3d at 943–44 ("Rather than resort to summary judgment, the Court construes [the Rule 12(c) motion] as a motion for pretrial-adjudication of [the defendant's] personal jurisdiction defense under Rule 12(i)."); *see also, e.g., Horton v. SunPath Ltd.*, No. 3:23-cv-631, 2023 WL 2653386, at *2 (N.D. Tex. Mar. 27, 2023) (considering the defendant's post-answer challenge to personal jurisdiction to be a Rule 12(i) motion); *Denari v. U.S. Dry Cleaning Serv. Corp.*, No. 1:17-CV-0031, 2017 WL 2779051, at *4 (E.D. Cal. June 27, 2017) (ruling on the defendant's preserved improper venue objection as a Rule 12(i) motion); *Branson v. Am. Int'l Indus.*, No. 1:15cv73, 2016 WL 3190222, at *4 (M.D.N.C. June 7, 2016) ("[I]f advanced after a responsive pleading, an ostensible Rule 12(b) motion effectively constitutes a request for preliminary adjudication under Rule 12(i)[.]"); 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1373 (3d ed.) (noting that Rule 12(i) "authorizes a preliminary hearing for the Rule 12(b) defenses and for a motion under Rule 12(c)").  Because "[a] motion's 'nomenclature is not controlling[,]'" the Court is within its discretion to "construe [a motion], however styled, to be the type proper for the relief requested."  *United States ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (citations omitted).

Construing Defendant's Motion as a Rule 12(i) motion allows the Court to apply the Rule 12(b)(2) standard to Defendant's Motion.  *See Owino*, 700 F. Supp. 3d at 944.  Under Rule 12(i), as under Rule 12(b)(2), the prima facie standard applies when a court decides the motion without an evidentiary hearing.  *See Data Disc. Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (holding that when a court decides a Rule 12(i) motion without an evidentiary hearing, the prima facie standard applies); *Ranza*, 793 F.3d at 1068 (holding that when a court decides a Rule 12(b)(2) motion without an evidentiary hearing,

23-CV-2184 TWR (DDL)

the prima facie standard applies); *see also Owino*, 700 F. Supp. 3d at 944.  Therefore, by construing Defendant's Motion as a Rule 12(i) motion for pre-trial adjudication, the Court is able to apply the Rule 12(b)(2) standard to Defendant's Rule 12(c) motion without implicating Rule 12(d).

Accordingly, to survive Defendant's Motion, Plaintiff must make a prima facie showing of personal jurisdiction, taking all uncontroverted allegations as true.  *See Ranza*, 793 F.3d at 1068.  The Court considers declarations and other materials submitted by both Parties but resolves all factual conflicts in favor of Plaintiff.  *See id.*; *LNS Enters. LLC*, 22 F.4th at 858.

## II.    Analysis

Defendant asks the Court to dismiss the First Amended Complaint "because the Court lacks personal jurisdiction over [Defendant]."  (Def.'s Mem. at 6.)  In support, Defendant offers sworn declarations from Christine Flores, Matt Baker, Ilco Trimceski, and Benjamin Williams, as well as a "Reseller Marketing Agreement" between Defendant and Linking Flux and an excerpt of the transcript from Ilco Trimceski's August 22, 2024 deposition.  (*See generally* Docket.)  Plaintiff counters that Defendant has waived its personal jurisdiction challenge, (*see* Opp'n at 5), and argues in the alternative that he has made a prima facie showing of specific personal jurisdiction under a theory of agency liability, (*see* Opp'n at 5–7; Pl.'s Supp. Br. at 5–8).  In support of his position, Plaintiff offers a sworn declaration of his own, as well as an audio recording of the December 5, 2019 call, copies of the emails Plaintiff allegedly received from Defendant after the calls, and an excerpt of the transcript from Ilco Trimceski's August 22, 2024 deposition.  (*See generally* Docket.)  For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion.

### A.    Waiver

Plaintiff argues that "Defendant may not raise a Rule 12(b)(2) motion after filing an [a]nswer" and that Defendant's Motion is an "attempt to dragoon a late [Rule 12(b)(2) motion] in through the backdoor of a Rule 12(c) motion[.]"  (*Id.*)

If a defendant contests the court's personal jurisdiction in its first responsive pleading, the defendant preserves the defense and may assert lack of personal jurisdiction in a post-answer Rule 12(c) motion. *See* Fed. R. Civ. P. 12(h)(1)(B) ("A party waives any defense listed in Rule 12(b)(2)–(5) by…failing to…include it in a responsive pleading"); *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1281 (9th Cir. 2021) ("Rules 12(b) and 12(h) provide that a defendant…may choose to assert a defense by answer without risking forfeiture of that defense."); *Levi Sap Nei Thang Victims Ass'n v. Thang*, No. 2:23-cv-4210, 2024 WL 1640893, at *1 (C.D. Cal. Feb. 5, 2024) ("A defendant who has preserved a personal jurisdiction defense may raise that defense in a motion under Fed. R. Civ. P. 12(c)."); *Moledina*, 635 F. Supp. 3d at 946 ("[The defendant] sufficiently preserved its jurisdictional defense pursuant to Rule 12(h) and is free to argue lack of personal jurisdiction in its Rule 12(c) motion[.]").

If the defendant files a Rule 12(b) motion without asserting its personal jurisdiction defense, however, the defendant waives the defense—even if it challenges the court's personal jurisdiction in its answer. *See Robinson v. OnStar, LLC*, No. 15-CV-1731, 2020 WL 364221, at *9 (S.D. Cal. Jan. 22, 2020) ("[The defendant's] failure to assert personal jurisdiction in its first responsive pleadings . . . constitutes a waiver of such a defense."); *Mussat v. Enclarity, Inc.*, 362 F. Supp. 3d 468, 472–73 (N.D. Ill. 2019) (denying the defendant's Rule 12(c) motion based on lack of personal jurisdiction because the defendant did not object to the court's personal jurisdiction in its previous Rule 12(b)(6) motion).

From the outset, Defendant has maintained its objection to the Court's personal jurisdiction. In its Answer, Defendant stated that it "specifically denies that it has any contacts with this forum…and thus denies that the Court has personal jurisdiction over it." (Ans. ¶ 2.) Defendant further clarified that it "[did] not waive [its] objection to personal jurisdiction and intend[ed] to challenge the Court's personal jurisdiction in a forthcoming motion." (Ans. ¶ 2.) Elsewhere in its Answer, Defendant asserted the Court's lack of personal jurisdiction as an affirmative defense. (Ans. at 25–26.) Importantly, Defendant's / / /

Answer was its first responsive pleading—it filed no pre-answer Rule 12(b) motions. (*See generally* Docket.)

Because Defendant objected to the Court's personal jurisdiction in its first responsive pleading, Defendant sufficiently preserved its jurisdictional defense. *See* Fed. R. Civ. P. 12(h)(1)(B); *see also Argonaut Ins. Co.*, 17 F.4th at 1281; *Levi Sap Nei Thang Victims Ass'n*, 2024 WL 1640893 at *1; *Moledina*, 635 F. Supp. 3d at 946. Therefore, the Court finds it appropriate to consider Defendant's lack of personal jurisdiction defense at this stage in the proceeding.

### B.    Personal Jurisdiction

Having determined that Defendant sufficiently preserved its jurisdictional challenge, the Court proceeds to the merits of the defense. "A Court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018). Constitutionally, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Statutorily, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Civ. Proc. Code § 410.10. The Supreme Court has recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

### 1.    General Personal Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear*, 564 U.S. at 924). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the

incidents underlying the claim occurred in a different State." *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).

Defendant argues that the Court does not have general personal jurisdiction over it because it "is a Delaware corporation with its principal places of business in Connecticut" and "has no business operations or corporate offices" in California. (Def.'s Mem. at 11.)  In support of its argument, Defendant offers the sworn declaration of Christine Flores, its Senior Manager of Legal Services. (Flores Decl. ¶ 3.) Flores attests that only nine percent of Defendant's employees work in California and that none of these employees are "executive-level employees." (*Id.* ¶¶ 7–8.) Plaintiff, for his part, "is not contending general [personal] jurisdiction in this case[.]" (Pl.'s Supp. Br. at 5.) Because Defendant's business operations in California are limited, it cannot be "fairly regarded as at home" in the state. *See Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 924).  Therefore, the Court does not have general personal jurisdiction over Defendant.

### 2.    *Specific Personal Jurisdiction*

Defendant next contends that Plaintiff has not made a prima facie showing of specific personal jurisdiction.  (Def.'s Mem. at 12–15.)  For a court to exercise specific jurisdiction, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (alterations and emphasis in original) (quoting *Daimler*, 571 U.S. at 127 (2014)) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–473 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919).  "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919).

Specific jurisdiction also requires "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Ninth Circuit applies a three-part test to assess whether a non-resident defendant has sufficient contacts to be subject to a State's personal jurisdiction:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger*, 374 F.3d at 802). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

"For the purposes of personal jurisdiction, the actions of an agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 414 (9th Cir. 1977). In this case, whether Plaintiff has made a prima facie showing of specific personal jurisdiction depends on whether Plaintiff has made a prima facie showing that Defendant is responsible for the violative calls under a theory of agency liability. If Plaintiff demonstrates that Defendant is prima facie liable for the calls Plaintiff received in California, then he will have shown

/ / /

(1) that Defendant purposefully availed itself of the forum state and (2) that his claim arises out of or relates to Defendant's contacts with the forum state.

"Whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (citing Restatement (Third) of Agency § 1.02). Despite Defendant's arguments to the contrary, (*see* Def.'s Mem. at 17; Def.'s Supp. Br. at 9–10), "it is not dispositive" that the contract between Defendant and Linking Flux "define[s] their relationship[] as independent contractors[.]" *See Henderson*, 918 F.3d at 1073; *see also U.S. v. Milovanovic*, 678 F.3d 713, 725 (9th Cir. 2012) (holding that the parties had an agency relationship even though their agreement labeled them as independent contractors). To meet Defendant's jurisdictional challenge, Plaintiff relies on two agency principles—apparent authority and ratification—to demonstrate that Defendant is prima facie liable for the calls placed by Linking Flux.[7] (Pl.'s Supp. Br. at 9.)

---

[7]    Defendant contends that the Court cannot consider Plaintiff's declaration or the audio recording of the December 5 call because they "are inadmissible under the Federal Rules of Evidence." (Def.'s Supp. Br. at 7.) Specifically, Defendant argues that certain statements are inadmissible hearsay, lack foundation, or are speculative. (Def.'s Supp. Br. at 7–9.) Defendant cites no authority—binding or otherwise—to support the application of the Federal Rules of Evidence at this stage of the proceedings. (*See* Def.'s Supp. Br. at 7–9 (citing cases in which evidence was excluded only at summary judgement or at trial).) Regarding Defendant's hearsay objections, because the nature of the relationship between Defendant and the party who placed the December 5 call is a central dispute in this matter, it is not appropriate to determine at this early procedural stage whether the caller was an agent of Defendant for the purposes of Federal Rule of Evidence 801(d)(2). Furthermore, several of Defendant's other objections are predicated on the form in which Plaintiff's evidence is offered, rather than the evidence itself. For example, Defendant objects to Plaintiff's statement that he "now believes that Spectrum is in fact is [sic] the controlling entity for all Spectrum Entities[,]" (Charman Decl. ¶ 15), arguing that "[Plaintiff] provides no facts supporting this 'belief' or otherwise explaining why he is qualified to give that opinion based on his personal knowledge." (Def.'s Supp. Br. at 9.) Even at the summary judgment stage, when evidentiary objections are proper, *see* Fed. R. Civ. P. 56, objections based on evidence's form are not appropriate. *Fraser v. Goodale*, 342 F.3d 1032, 1035 (9th Cir. 2003); *see also Block v. Cty. of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial[.]"). Accordingly, the Court finds it appropriate to consider at this juncture both Plaintiff's declaration and the statements made by the caller during the December 5 call.

23-CV-2184 TWR (DDL)

a.     Apparent Authority

"Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation."  Restatement (Third) Of Agency § 3.03 (2006).  Although "[a]pparent authority cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it," *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997), apparent authority can be established by "direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts[,]" *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co*., 414 F.2d 750, 756 (9th Cir. 1969)).

Defendant entered into a "Reseller Marketing Agreement" with Linking Flux.  (*See* Contract.)  This contract directed Linking Flux to refer to itself as a "Spectrum Authorized Reseller" when marketing Defendant's services.  (*Id.* at 7.)  Defendant agreed not only to "provide all logos, brochures, literature, advertising and promotional materials, . . . [and] copyright and trademark information[,]" but also to "provide direction and training as to their proper use."  (*Id.* at 13.)  Furthermore, Exhibit D of the Contract explicitly instructs Linking Flux how to use Defendant's trademarks when marketing Defendant's services.  (*Id.* 26–28.)  Although Defendant argues that these manifestations cannot demonstrate apparent agency because they were not made directly to Plaintiff, (*see* Def.'s Supp. Br. at 9–11), they are "directions to [Linking Flux] to tell something to [Plaintiff and] the granting of permission to [Linking Flux] to perform acts[.]"  *See Marvix Photographs, LLC*, 873 F.3d at 1055.  Namely, Defendant's manifestations grant Linking Flux the authority to market on Defendant's behalf and direct Linking Flux how to represent itself when doing so.  As such, these manifestations can reasonably form the basis for Plaintiff's

/ / /

belief that Linking Flux was authorized to call him on Defendant's behalf.[8]   At this preliminary stage, the Court finds that Plaintiff has made a prima facie showing that Linking Flux acted with apparent authority when it called Plaintiff.

### b. Ratification

"'Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" *Henderson*, 918 F.3d at 1073 (quoting Restatement (Third) of Agency § 4.01).   Although Defendant argues that ratification requires a preexisting agency relationship, (*see* Def.'s Mem. at 19; Def.'s Supp. Br. at 15), ratification can "creat[e] an agency relationship when none existed before," *Henderson*, 918 F.3d at 1073–74.   "[A] person may ratify an act . . . by receiving or retaining benefits it generates if the person has knowledge of material facts." *Id.* at 1075 (quoting Restatement § 4.01 cmt. g).   "This knowledge requirement is met if the principle either has 'actual knowledge' or 'choose[s] to affirm without knowing the material facts.'" *Id.* at 1075 (quoting Restatement § 4.06 cmt. b).   Therefore, to demonstrate ratification at this stage of the proceedings, Plaintiff must make a prima facie showing (1) that Defendant received or retained a benefit from Linking Flux's violative calls and (2) that Defendant either knew Linking Flux was making calls in violation of the TCPA or "'had knowledge of facts that would have led a reasonable person to investigate further.'" *See id.* at 1075–76 (quoting Restatement § 4.06 cmt. d); *see also Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018).

///

---

[8]    Defendant argues that Plaintiff did not sufficiently allege in the First Amended Complaint that he reasonably relied on Defendant's manifestations.   (Def.'s Supp. Br. at 13 n.2.)   Under the Rule 12(b)(2) standard, however, the Court considers the evidentiary record before it—not the sufficiency of the Complaint's allegations—to determine whether Plaintiff has made a prima facie showing of personal jurisdiction.   *Data Disc, Inc.*, 557 F.2d at 1285 ("If the court determines that it will receive only . . . affidavits plus discovery materials . . . a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.").   The Court's finding in that regard has no bearing on whether Plaintiff will ultimately be able to establish Defendant's liability on the merits of his claim.

### i.    Benefit Received or Retained

Plaintiff argues that Defendant received and retained the benefit of "the valuable sales lead" generated by Linking Flux's violative calls.  (Pl.'s Supp. Br. at 9.)  Plaintiff attests that he received "emails directly from [Defendant]" after he expressed interest in Defendant's services during a call with Linking Flux.  (Charman Decl. ¶¶ 7–8.)  Plaintiff submitted copies of the emails he received, (*see* ECF No. 46-4), and he argues that the emails demonstrate that Defendant "tried to consummate the profitable sale of [its] cable services."  (Pl.'s Supp. Br. at 9.)  Plaintiff's evidence indicates that Defendant received the benefit of a potential new customer as a direct result of Linking Flux's violative calls.

Defendant responds that it received no benefit from the violative calls because Plaintiff ultimately decided not to purchase Defendant's services.  (Def.'s Mem. at 14–15; Def.'s Supp. Br. at 15–16.)  The Court disagrees.  Linking Flux allegedly contacted Plaintiff and marketed Defendant's services.  This act alone undoubtedly conferred a benefit upon Defendant.  Plaintiff's assertions that he expressed interest in making a purchase and that Defendant pursued the sales lead merely increase the benefit received by Defendant and further demonstrate the relationship between Defendant and Linking Flux.

### ii.    Actual Knowledge or Willful Ignorance

The emails Defendant allegedly sent Plaintiff after the violative calls, (*see* ECF No. 46-4), as well as the "Reseller Marketing Agreement" between Defendant and Linking Flux, (*see* Contract), plausibly support the inference that Defendant possessed the requisite knowledge to ratify the calls.  Plaintiff has demonstrated that Defendant and Linking Flux had an active professional relationship premised upon Linking Flux's ability to market Defendant's services.  Some interaction between the two entities was necessary to allow Defendant to pursue the sales lead that Linking Flux generated during the violative phone call.  If Linking Flux was in fact placing calls in violation of the TCPA, there is a reasonable possibility that Defendant knew or should have known of the violative calls.  At the Rule 12(b)(2) stage, such a showing is sufficient.  *See Ranza*, 793 F.3d at 1068.

/ / /

1    Defendant disagrees, however, and argues that it could not have known of Linking

2   Flux's violative calls because "[Defendant] prohibits its Retail Partners like Linking Flux

3   . . . from making *any* outbound telemarketing calls on [Defendant]'s behalf."  (*See* Def.'s

4   Mem. at 19 (emphasis in original) (citing Baker Decl. ¶¶ 8–10; Trimciski Decl. ¶ 12);

5   Def.'s Supp. Br. at 16.)  Defendant relies heavily on the statements of Ilco Trimceski, an

6   employee who "oversaw certain retail partner operations for [Defendant.]"  (Trimceski

7   Decl. ¶ 3.)  Trimceski claims that he audited Linking Flux's inbound calls and that he did

8   not "recall any instances of suspicious activity" or receive any complaints about Linking

9   Flux.  (Trimceski Dep. at 31, 46.)  According to Defendant, this evidence "confirms . . .

10   that the callers' conduct . . . cannot be imputed to [Defendant.]"  (Def.'s Mem. at 15; *see*

11   *also* Def.'s Supp. Br. at 16.)

12    Defendant overstates Plaintiff's burden.  Plaintiff is not required to prove the merits

13   of his case at this stage of the proceedings.  *See Data Disk., Inc.*, 557 F.2d at 1285, n.2

14   (holding that, on a Rule 12(b)(2) motion "where the jurisdictional facts are enmeshed with

15   the merits, the district court may decide that the plaintiff . . . should be required only to

16   establish a prima facie showing of jurisdictional facts with affidavits and perhaps discovery

17   materials").  Although Defendant's evidence may ultimately refute Plaintiff's ratification

18   theory at a later stage in the proceedings, the Court must "resolve all genuine disputes in

19   the plaintiff's favor" at the Rule 12(b)(2) stage.  *See Glob. Commodities Trading Grp., Inc.*

20   *v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020); *see also LNS*

21   *Enters. LLC*, 22 F.4th at 858; *Ranza*, 793 F.3d at 1068.  Assuming the veracity of Plaintiff's

22   evidence, as the Court is required to do at this stage, the Court finds that Plaintiff has made

23   a prima facie showing that Defendant ratified Linking Flux's violative calls.

24    Because Plaintiff has made a prima facie showing that Linking Flux acted with

25   apparent authority when it called Plaintiff and that Defendant ratified the violative calls,

26   the Court finds that Plaintiff has met his burden of "satisfying the first two prongs of the

27   / / /

28   / / /

[specific personal jurisdiction] test."[9]  *Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 802).  As such, the burden "shifts to [D]efendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).  Defendant, however, makes no argument in that regard.  (*See* Def.'s Supp. Br. at 17 n.3.)  Accordingly, the Court finds that Plaintiff has made a prima facie showing of specific personal jurisdiction and **DENIES WITHOUT PREJUDICE** Defendant's Motion.

### C.    *Jurisdictional Facts Intertwined with the Merits of the Dispute*

Although Plaintiff has satisfied his jurisdictional burden at this stage in the proceedings, *see supra* Section II.B.2, the Court notes a separate reason for denying Defendant's Motion.  The Ninth Circuit has recognized that a plaintiff should not be required to prove the merits of his case to establish personal jurisdiction in a preliminary proceeding.  *See Data Disc, Inc.*, 557 F.2d at 1285 & n.2.  "Where the jurisdictional facts

---

[9]    On December 5, 2024, Defendant filed an *Ex Parte* Application for Leave to Submit New Evidence.  (*See* ECF No. 51.)  Because the Court previously granted both Parties the opportunity to supplement the record after the October 24, 2024 hearing, (*see* ECF No. 45), and Defendant took advantage of that opportunity, (*see generally* Def.'s Supp. Br.), the Court declines to consider Defendant's additional evidence at this time.  The deadline for the Parties to supplement the record has passed.  (*See* ECF No. 45.)

Additionally, the Court is mindful of the procedural complexity of the instant Motion.  Defendant filed a Rule 12(c) motion, but the Court has resorted to Rule 12(i) so that it can adjudicate what is, effectively, a Rule 12(b)(2) motion.  *See supra* pp. 7–10.  The Court found it appropriate to accept additional briefing from the Parties after the October 24, 2024 hearing in light of the matter's unorthodox procedural posture, but the Court does not find it appropriate to continue to accept additional evidence from the Parties at this time.

Regardless, Defendant's additional evidence would not alter the Court's analysis or conclusion.  Defendant offers a transcript from the deposition of Tahir Sohail, a representative of Linking Flux.  (*See* ECF No. 51-2.)  Although Sohail's testimony purportedly reinforces Defendant's position that neither it nor Linking Flux called Plaintiff, (*see* ECF No. 51 ¶ 6 ("The deposition testimony confirms that Linking Flux was unaware of any instances where it made any outbound calls for [Defendant].")), this evidence merely contradicts Plaintiff's sworn statements that he received a call from someone claiming to represent Defendant, that he placed an order during a callback, and that he received confirmation emails from Defendant.  As the Court has reiterated, all factual disputes are resolved in Plaintiff's favor at this stage.  *See Glob Commodities Trading Grp., Inc.*, 972 F.3d at 1106.  Accordingly, the Court **DENIES** Defendant's *Ex Parte* Application for Leave to Submit New Evidence.

are intertwined with the merits, a decision on the jurisdictional issues is dependent on a decision of the merits." *Id.* "In such a case, . . . it is preferable that this determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Id.* (citing 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1350 (1969)).

The central factual issue in this case is whether Defendant—or an agent of Defendant—called Plaintiff. The determination of this issue will govern the resolutions of both Defendant's personal jurisdiction defense and Plaintiff's TCPA claims. At the Rule 12(b)(2) stage, Plaintiff "[i]s obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys.*, 551 F.2d at 787. Plaintiff satisfied this obligation by offering a sworn declaration in which he avers that he received a call in San Diego County from someone claiming to work for or represent Defendant, that he received a callback from someone claiming to work for or represent Defendant, and that he received confirmation emails from Defendant after he placed an order during the callback. (Charman Decl. ¶¶ 4–14.)

Defendant offers declarations and evidence in support of its position that it is not liable for the violative calls, claiming that "the evidence requires dismissal for lack of personal jurisdiction." (*See* Def.'s Mem. at 15.) Defendant seems to suggest that whenever a defendant's personal jurisdiction defense challenges allegations essential to the merits of the plaintiff's claim, the plaintiff must meet a summary judgment standard to avoid dismissal. This is not the first time Defendant has made such an argument in an attempt to avoid liability under the TCPA. *See Johnson v. Charter Commc'ns, Inc.*, No. 21-CV-06135-HSG, 2022 WL 2643980, at *4 (N.D. Cal. July 8, 2022) ("[Defendant]'s argument can be read to suggest that whenever a defendant submits an affidavit saying 'we didn't do what the plaintiff substantively alleges we did,' the plaintiff essentially has to meet a summary judgment standard just to survive dismissal."). The Ninth Circuit counseled against such an approach in *Data Disc, Inc.*, 557 F.2d at 1285 & n.2. Plaintiff, having made a prima facie showing of personal jurisdiction, is not required to refute Defendant's

evidence or to prove the merits of his claims at this stage of the proceedings.  For this reason, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion for Judgment on the Pleadings.

**IT IS SO ORDERED.**

Dated:  December 12, 2024

_____
Honorable Todd W. Robinson
United States District Judge

23-CV-2184 TWR (DDL)